**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tierra Right of Way Services, Ltd., an Arizona corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Abengoa Solar Inc., a Delaware corporation; Black Corporations or Limited Liability Companies I-X; White Partnerships I-X; and John and Jane Does I-X,<br><br>    Defendants. | No. CV-11-00323-PHX-GMS<br><br>**ORDER** |

Pending before the Court is a Motion to Dismiss and Compel Arbitration filed by Defendant Abengoa Solar Inc. ("Abengoa"). (Doc. 6). For the following reasons, the Court grants Abengoa's motion in part and denies it in part.

**BACKGROUND**

On November 12, 2009, the parties entered into a Consulting Agreement (the "Agreement") under which Plaintiff Tierra Right of Way Services, Ltd. ("Tierra") would provide right-of-way acquisition services for Abengoa's construction of a solar electrical generation plant. The contract contained an arbitration clause (Section 16) requiring arbitration of all claims "arising out of, relating to, or in connection with" the Agreement or "the breach, termination or validity thereof." (Doc. 6, Ex. A at 7). Tierra alleges that

Abengoa repeatedly failed to provide critical information for Tierra to perform its services under the contract. On September 24, 2010, Abengoa terminated the Agreement.

Tierra filed suit against Abengoa in the Maricopa County Superior Court on January 25, 2011, for breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment, alleging a balance of $317,239.73 due under the contract. Abengoa filed notice of removal to this Court on February 17, 2011, pursuant to 28 U.S.C. § 1332. Abengoa now brings before the Court a motion to dismiss the case and compel arbitration, or alternatively to stay these proceedings with respect to any non-arbitrable claims pending the outcome of arbitration. (Doc. 6).

## DISCUSSION

### I.   Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

### II.   Analysis

Abengoa argues that Tierra's claims against it are subject to binding arbitration. There appears to be no dispute that the claims fall within the scope of the Agreement; Tierra itself averred in its Complaint that the action "arises from [Abengoa's] breach of a contract entered into and related to goods and services provided in Maricopa County, Arizona." (Doc. 1, Ex. B at 4, ¶ 5). Indeed, Tierra does recognize that it must submit to arbitration, but it seeks this Court's modification of the arbitration clause on the grounds that, as currently written, the clause is unconscionable. (Doc. 8 at 1).

The FAA "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2). While "the FAA clearly enunciates a congressional intention to favor arbitration, general contract defenses such as unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) (internal citations, ellipsis, and quotations omitted).[1] Since "unconscionability is governed by state law," *Chalk*, 560 F.3d at 1092, the Court must look to the law of the state governing unconscionability.[2]

**A.    Unconscionability**

Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988). As such, there must be "some showing of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *State v. Avco Fin. Serv. of N.Y.*, 406 N.E.2d 1075, 1078 (N.Y. 1980) (quoting *Williams v.*

---

[1] The recent Supreme Court case of *AT&T Mobility LLC v. Concepcion*, called to this Court's attention through supplemental briefing, notes that the savings clause of 9 U.S.C. § 2 "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." 131 S.Ct. 1740, 1742–43 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). This case only concerns the first of these categories.

[2] Section 15 of the Agreement provides that "[t]his Agreement is made under and shall be governed, construed, and interpreted according to the laws of the State of New York, applicable to contracts made and to be performed therein, without regard to its conflict of law provisions." (Doc. 6, Ex. A at 7). Accordingly, the Court's unconscionability analysis is guided by New York law. Tierra does not cite to any New York cases in support of its position, while Abengoa cites to both Arizona and New York cases, arguing that the arbitration clause is not unconscionable under the law of either state.

- 3 -

1  *Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). Tierra argues that there
2  are five particular provisions within the Agreement leading to an unconscionable result
3  which ought to be held unenforceable and subject to modification by the Court: (1) the
4  application of New York law to the dispute; (2) the stipulation that arbitration proceedings
5  are to be held in San Francisco; (3) the prohibition on discovery or document production in
6  connection with the arbitration proceedings; (4) the stipulation that the arbitration be
7  conducted in accordance with the Rules of Arbitration of the International Chamber of
8  Commerce (ICC); and (5) the term requiring arbitration by three arbitrators.

### 1. Procedural Unconscionability

Under New York law, the procedural unconscionability analysis focuses on the contract formation process and examines "such matters as the size and commercial setting of the transaction . . . whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Gillman*, 534 N.E.2d at 828. A key consideration is whether "one party lacked any meaningful choice in entering into the contract." *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573 (N.Y. App. Div. 1998) (citing *Gillman*, 534 N.E.2d at 828).

Tierra never directly contends that the arbitration clause is procedurally unconscionable, but rather urges the Court to infer procedural unconscionability from its arguments focusing on substantive unconscionability. It does not, however, cite to any authority for the Court to make such a determination. This Court will therefore not engage in such a speculative and unsupported pursuit.

In its Response, Tierra does allege that Abengoa is a larger corporate enterprise and wrote the arbitration provision at issue. (Doc. 8 at 6). To the first point, the disparity in size between the corporations does not appear to be large.[3] As between two "commercial entities

---

[3] There seems to be some dispute about how to determine the size of each enterprise, given Tierra appears to have used the size of Abengoa's corporate parent in its Response.

- 4 -

dealing at arm's length," the difference in size becomes even less relevant than in the "classic case" of an individual against a corporation. *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 344 N.E.2d 391, 396 (N.Y. 1976). Further, mere difference in size of the parties, by itself, is insufficient to show procedural unconscionability, which focuses on such aspects of the contract formation process such as bargaining conditions, the contracting experience of the parties, or the use of deceptive practices. *Builders Grp. LLC v. Qwest Commc'ns Corp.*, 2009 U.S. Dist. LEXIS 91194 at *15–16 (S.D.N.Y. 2009). Beyond its bare statement arguing a difference in size, Tierra provides no evidence to establish procedural unconscionability on the grounds of disparate bargaining power or other contract formation imbalances or irregularities.

Tierra has also failed to demonstrate that the Agreement is an adhesion contract just because Abengoa allegedly wrote the arbitration clause. The emphasis here is on "meaningful choice," *Brower*, 676 N.Y.S.2d at 573, and Tierra does not point to any evidence suggesting the clause was "unfair or nonnegotiable." *Equitable Lumber*, 344 N.E.2d at 396. Likewise, Tierra does not argue that its opportunities to contract for favorable terms were limited. *See id.* Accordingly, any potential claim that the clause is procedurally unconscionable as a contract of adhesion must fail.

In holding that the arbitration clause is not procedurally unconscionable, the Court would normally end the inquiry, as procedural unconscionability is generally a necessary condition under New York law to render a contractual provision unenforceable.[4] However, *Gillman* notes that "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive

---

Assuming the parties' respective allegations are true, Abengoa employs more individuals (Doc. 9 at 4–5 n. 2–3), but Tierra has more offices (*Id.*). Nothing alleged by either party points to a significant difference in size between the two.

[4]Arizona law is more explicit that substantive unconscionability alone is sufficient to render a contractual provision unenforceable. *Maxwell v. Fid. Fin. Servs.*, 184 Ariz. 82, 90, 907 P.2d 51, 59 (1995).

1 unconscionability alone." 534 N.E.2d at 829. Further, the choice of governing law clause itself is being challenged as unconscionable, and this point must be resolved to establish that New York law is appropriate for the Court to apply to the unconscionability analysis. Therefore, the Court also considers Tierra's claims of substantive unconscionability.

### 2. Substantive Unconscionability

New York law requires "an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 534 N.E.2d at 829.

#### a. New York Law Applied to the Dispute

Section 15 of the Agreement provides that the Agreement is governed by New York law. (Doc. 6, Ex. A at 7). Section 16 separately requires that the "arbitration law (lex arbitri) of New York shall govern the arbitration." (*Id.*). Tierra is unclear in its Response whether it challenges Section 15, the lex arbitri provision of Section 16, or both. In any event, Tierra relies solely on Arizona statutory and case law authority. Abengoa contends that whether this Court applies Arizona law or New York law, the same finding–that the arbitration clause is not unconscionable–results. The Court will construe Tierra's argument to allege that both Section 15 and the lex arbitri provision of Section 16 are unconscionable.

In a diversity case such as this, "the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Arizona applies the Restatement (Second) of Conflict of Laws § 187 to determine whether the parties' choice of law in a contract is valid. *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 266, 77 P.3d 439, 441 (2003) (citing *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207, 841 P.2d 198, 202 (1992)). The Restatement provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied," save for two exceptions: (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (2) "application of the law of the chosen state would be contrary to a fundamental policy" of Arizona. RESTATEMENT (SECOND) OF

CONFLICT OF LAWS § 187 (1971). Neither of these exceptions applies here.

Apparently, New York has little to do with the activities of the parties under the Agreement. As Tierra argues, Arizona state law will ultimately govern the eminent domain and other real property issues which arise in the course of performance of the Agreement. However, there is a reasonable basis for the parties to designate New York law as applicable. Abengoa cites numerous authorities suggesting that many contracting parties select New York law due to that state's reputation as an international commercial center or to standardize contracting when the parties do business nationwide. *See, e.g., Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 470 (S.D.N.Y. 2001) (noting New York's passage of a statute doing away with the reasonable relationship requirement in certain contracts in order to "augment [the state's] reputation as a center of international commerce" (quoting *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 136 (S.D.N.Y. 2000))); *Hansen v. GAB Bus. Servs.*, 876 P.2d 112, 113 (Colo. App. Ct. 1994) (holding, pursuant to the Restatement, that a company formerly based in New York and conducting business across the United States had a reasonable basis to choose New York law to apply to the contract).[5] Since its parent company appears to be based in Spain and has offices–and likely conducts business–in multiple states and around the globe (*see* Doc. 8, Ex. B–E), Abengoa's desire to have the Agreement governed by the laws of New York is not unreasonable.

The second exception also does not apply. Tierra has not argued, let alone demonstrated, that the application of New York law to this dispute would be contrary to a fundamental policy interest of Arizona. Because neither exception under the Restatement is met, the Court will not stray from the parties' clear choice of New York law as both the

---

[5] Indeed, a recent law review article determined that New York law was chosen in almost half of all commercial contracts in a survey of public corporations' Form 8-K filings in a 7-month period of 2002. *See* Theodore Eisenberg & Geoffrey P. Miller, *The Flight to New York: An Empirical Study of Choice of Law and Choice of Forum Clauses in Publicly-Held Companies' Contracts*, 30 CARDOZO L. REV. 1475, 1475 (2009).

- 7 -

governing law and the lex arbitri of the Agreement.

### b. Arbitration Proceedings Occurring in San Francisco

Tierra next argues that the selection of San Francisco as the forum for the arbitration proceedings is unconscionable. "Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). As the party challenging the forum selection clause, Tierra bears the burden "to show that trial in the contractual forum would be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *Manetti-Farrow*, 858 F.2d at 515 (quoting *The Bremen*, 407 U.S. at 18). Tierra has not met its burden here.

Tierra's argument that the forum selection of San Francisco is unconscionable rises merely to the level of conclusory speculation, again revolving around the difference in corporate character between it and Abengoa. Nowhere does Tierra attempt to quantify the burden that arbitration proceedings in San Francisco would place upon it. Every case upon which it relies concerns a dispute between employer and employee or otherwise between an individual and a corporate party. Tierra cites no case in which a forum selection clause bargained for in a commercial context between two corporate parties was declared unconscionable. This is no surprise given New York's willingness to enforce forum selection clauses even in contracts between consumers and corporations. In *Brower*, the court upheld a forum selection clause placed into a contract between a computer manufacturer and consumers, tersely declaring that it "[did] not find that the possible inconvenience of the chosen site (Chicago) alone rises to the level of unconscionability." 676 N.Y.S.2d at 574. The Court therefore finds that the forum selection of San Francisco is not unconscionable.

### c. Prohibition on Discovery or Document Production

Tierra additionally argues that the arbitration clause's prohibition on discovery or

- 8 -

1  document production is unconscionable. However, it makes conclusory statements without
2  any particularized evidence to support its view that its lack of access to more formal and
3  complete discovery mechanisms prejudices its claims. Nowhere does Tierra specifically
4  allege how an inability to conduct discovery or demand production of documents will render
5  it incapable of presenting and proving its case, particularly when its similarly situated
6  corporate opponent also is so limited. Indeed, the Supreme Court has recognized that
7  although arbitration procedures "might not be as extensive as in the federal courts, by
8  agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the
9  courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v.*
10 *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (quoting *Mitsubishi Motors Corp. v.*
11 *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). An agreement between two
12 corporate parties to decrease expected litigation costs is not unconscionable, particularly
13 when both sides must adhere to the same prohibitions. Ultimately, this Court is unwilling
14 to interfere with the parties' desire to choose arbitration rules aimed at minimizing potential
15 litigation expense simply because actual litigation has now come to pass.

### d. Arbitration Conducted in Accordance with ICC Rules

17 Tierra devotes a portion of its Response to a section challenging the applicability of
18 ICC Rules to the arbitration dispute, arguing that this is yet another unconscionable
19 provision. Remarkably, Tierra provides no argument whatsoever that the Rules themselves
20 are inherently unfair or oppressive. Rather, Tierra alleges that two of Abengoa's corporate
21 officers are members of the ICC's board of directors, raising "serious concerns whether
22 arbitrators of the ICC will not be tempted to favor a party who is a member of the ICC and
23 who has two officers on the ICC's board." (Doc. 8 at 15 (emphasis removed)). In its Reply,
24 Abengoa maintains that it has no officers as board members of the ICC and that Tierra
25 mistakenly identified officers of another corporation.

26 Even if Tierra is correct, its argument is barred by established Supreme Court
27 precedent. In *Gilmer*, the plaintiff speculated that his arbitration panel would be biased
28 toward his employer. The Court there noted that "[w]e decline to indulge the presumption

1  that the parties and arbitral body conducting a proceeding will be unable or unwilling to
2  retain competent, conscientious and impartial arbitrators." *Gilmer*, 500 U.S. at 30 (quoting
3  *Mitsubishi*, 473 U.S. at 634). Article 8 of the ICC Rules provides that, when three arbitrators
4  are used, each party nominates one and the International Court of Arbitration nominates the
5  third; Article 11 allows for challenges to an arbitrator selection, apparently without limit.
6  (Doc. 8, Ex. A at 8–9.) The FAA allows for a district court to vacate an arbitration award
7  "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2).
8  Thus, there are sufficient mechanisms within and without the ICC Rules to ensure that the
9  arbitration is fair and justice is done. In the meantime, Tierra has simply failed to argue that
10 the ICC Rules are so one-sided and oppressive as to be unconscionable.

### e. Panel of Three Arbitrators

12 Tierra's last unconscionability argument surrounds its request for the Court to modify
13 the arbitration clause such that only one arbitrator, rather than three, will conduct arbitration
14 proceedings. It contends that, based on a claim of approximately $317,240, its total
15 administrative expenses and arbitration fees of $104,830 from three arbitrators are
16 unconscionably high. While it appears the administrative fees would be $10,345 as alleged,
17 Tierra's calculations regarding the arbitrator's fees are somewhat misleading. First, it
18 appears that Tierra tripled the fee of a single arbitrator to reach its $94,485 figure. ICC Rules
19 provide that "[w]hen a case is submitted to more than one arbitrator, the Court, at its
20 discretion, shall have the right to increase the total fees up to a maximum which shall
21 normally not exceed three times the fees of one arbitrator." (Doc. 8, Ex. A at 23). Tierra's
22 conclusory allegation of fee tripling is not adduced with any evidence to suggest that the ICC
23 Court will generally triple such fees when three arbitrators hear the case. Tierra has provided
24 no more reason for this Court to believe that the total arbitrator's fee would be $94,485 than
25 $31,495, or anywhere in between. A finding of unconscionability cannot be based on such
26 unwarranted speculation.

27 Second, Tierra fails to mention that its $94,485 figure is the <u>maximum</u> arbitrator's fee
28 that may be charged by the ICC Court. There is, in fact, a range, where the minimum in this

1  case would be approximately $22,076. (*Id.* at 26). This is reflective of the tripling done by
2  Tierra; if that is divided by three, the base arbitrator's fee would be about $7,359 at
3  minimum. Neither of these amounts represents an unconscionably high figure. Tierra does
4  not provide this Court with any particular reason to believe that the ICC Court would charge
5  the maximum figure multiplied by three to yield total fees of almost $105,000. There is
6  insufficient evidence to suggest that arbitration by three arbitrators would yield fees
7  unconscionably high while arbitration by one arbitrator would not.

8       Assuming *arguendo* that Tierra's calculations are all representative of what would be
9  charged by the ICC Court, there are still two problems. First, the fees represent the total
10 charged to the parties, and the specific division of the fees between the parties is to be
11 decided by the ICC Court. (*Id.* at 16). Tierra has provided no evidence to support its
12 allegation that it would be assessed with all the costs of the arbitration proceeding. Second,
13 even if Tierra were to be assessed the full costs as it alleges, it cites no authority for the
14 proposition that, as between two sophisticated corporate parties, arbitration costs which are
15 seemingly a large share of the total amount in controversy would be unconscionable. It is
16 true that courts have been more sympathetic in the consumer/manufacturer context. *See, e.g.,*
17 *Brower*, 676 N.Y.S.2d at 571–74 (holding that application of ICC Rules to a dispute with
18 individual computer buyers, which required advance payment of non-refundable fees often
19 larger than the amount in controversy, was unconscionable). Since "the doctrine of
20 unconscionability has little applicability in the commercial setting because it is presumed that
21 businessmen deal at arm's length with relative equality of bargaining power," *Gillman v.*
22 *Chase Manhattan Bank*, 521 N.Y.S.2d 729, 732 (N.Y. App. Div. 1987) (citing *Equitable*
23 *Lumber*, 344 N.E.2d at 396), even if Tierra's allegations regarding total arbitration costs
24 based on three arbitrators were accurate, the Court will not stand in the way of Tierra
25 receiving only that which it capably bargained for.

26     **B.**    **Stay of Proceedings**

27      Because there is no dispute that Tierra's claims fall within the scope of the arbitration
28 clause and the Court does not find that clause to be unconscionable, the claims must be

- 11 -

submitted to arbitration. Abengoa requests that the claims against it be dismissed, or in the alternative that the Court stay any claims not subject to dismissal. Tierra requests that all claims be stayed pending the outcome of arbitration.

The Ninth Circuit favors a stay over a dismissal. *See Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 n. 1 (9th Cir. 2004) (explaining that the dismissal of a claim so that arbitration can proceed is an appealable order, while entering a stay is not, and noting that "[u]nnecessary delay of the arbitral process through appellate review is disfavored."). Furthermore, a stay is warranted by the language of the FAA, which provides that the Court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). It was "Congress' clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Accordingly, the Court will stay these proceedings pending the outcome of the litigation.

## CONCLUSION

The parties do not dispute that Tierra's claims fall within the scope of the arbitration clause of the Agreement. The arbitration clause is not unconscionable under either New York or Arizona law. While it appears none of Tierra's claims fall outside the scope of arbitration, considerations of judicial economy and adherence to the spirit of the FAA lead the Court to stay the claims rather than dismiss them outright.

**IT IS THEREFORE ORDERED** that Abengoa's Motion to Dismiss and Compel Arbitration (Doc. 6) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted in that Tierra is ordered to submit to arbitration consistent with the terms of Section 16 of the Agreement and this Order. The Motion is denied in that all of Tierra's claims against Abengoa are **STAYED** pending resolution of that arbitration.

/ / /

/ / /

/ / /

1   **IT IS FURTHER ORDERED** that Tierra and Abengoa shall file a joint status report informing the Court of the progress of arbitration on or before **September 7, 2011** and thereafter every 90 days.

DATED this 9th day of June, 2011.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge